E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
LYNDSI ALLSOP (Cal. Bar No. 323485)
Assistant United States Attorney
Violent & Organized Crime Section
MARIA ELENA STITELER (Cal. Bar No. 296086)
Assistant United States Attorney
International Narcotics, Money Laundering,
  & Racketeering Section
     1300/1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3165/6148
     Facsimile: (213) 894-0141
     E-mail:    lyndsi.allsop@usdoj.gov
                maria.stiteler@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-00434-DSF |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT JERMAINE EGGLESTON |
| v. | |
| JERMAINE EGGLESTON, | Sentencing Date: 04-17-2023<br>Sentencing Time: 8:30 a.m.<br>Location: Courtroom of the |
| Defendant. | Hon. Dale S. Fischer |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Maria Elena Stiteler and Lyndsi Allsop, hereby files its Sentencing Position regarding defendant Jermaine Eggleston ("defendant").

This position is based upon the attached memorandum of points and authorities; the files and records in this case; the Presentence

Investigation Report; the government's concurrently filed under seal position on safety valve, and exhibit attached thereto; and such further evidence and argument as the Court may permit.

Dated: March 27, 2023  Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

         /s/
LYNDSI ALLSOP
MARIA ELENA STITELER
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On September 14, 2020, at Los Angeles International Airport ("LAX"), defendant Jermaine Eggleston checked a bag to New Orleans with 2,986 grams of fentanyl hidden in a keyboard box in the bag's main compartment -- fentanyl with a wholesale value of more than a quarter million dollars in New Orleans. As a result of his conduct, defendant was charged with possession with intent to distribute fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi) (Dkt. No. 12) and convicted following a three-day jury trial (Dkt. Nos. 141-143).

In the Presentence Investigation Report ("PSR"), the United States Probation & Pretrial Services Office ("USPO") calculated a total offense level of 32 and a criminal history category of III, resulting in a Guidelines range of 151 to 188 months' imprisonment, with a ten-year mandatory minimum term of imprisonment. (Dkt. 165 (PSR) ¶¶ 91-92.) The USPO recommended that the Court impose a sentence of: (1) a term of 151 months' imprisonment, at the low-end of the Guidelines range; (2) a five-year term of supervised release; and (3) a mandatory special assessment of $100. (Dkt. 164 (Recomm. Letter).)

The government concurs with the USPO's Guidelines calculations, but disagrees with the recommended sentence. For the reasons set forth below, the government requests a sentence of 163 months' imprisonment, a five-year period of supervised release, and a special assessment of $100.

## II. STATEMENT OF FACTS

As set forth in the PSR, on September 14, 2020, a Transportation Security Administration ("TSA") officer was alerted to a suspicious bulk mass inside a Nautica black duffel bag that had been checked in defendant's name on Spirit Airlines flight 956 from LAX to New Orleans. (PSR ¶¶ 6-7.) Following TSA procedures, the officer conducted a manual search of the bag and discovered, hidden inside a computer keyboard box, three solid bricks of a then-unknown substance wrapped in plastic and tape. (Id. ¶ 7.) LAX Police Department officers and a DEA special agent responded to the gate for Flight 956, where they found defendant standing in line to board. (Id. ¶¶ 8-9.) Officer Woodard approached defendant, confirmed his identity, and asked him three times if he had checked a bag. (See Dkt. No. 177-2 ("Trial Tr. Day 1") 196:24-197:7; 198:16-23; see also PSR ¶ 9.) Defendant at first denied checking a bag. (See id. 200:11-201:1; PSR ¶ 9.) Then, in an about-face, defendant admitted that he had checked a bag that he and a "homie" had packed, but refused to identify his "homie." (See id. 201:2-9; PSR ¶ 9.) After this exchange, Officer Woodard called uniformed officers to arrest defendant. (See id. 202:13-25.)

The three bricks were tested, and contained 2,986 grams of fentanyl. (PSR ¶ 10.) DEA Special Agent Steve Paris testified that the wholesale value of 2,896 grams of fentanyl in New Orleans would have been more than a quarter million dollars at the time of the offense. (PSR ¶ 10 n.1.)

## III. THE PRESENTENCE REPORT AND GUIDELINE CALCULATIONS

### A. Sentencing Guideline Calculations

The government concurs with the PSR's calculation of defendant's

total offense level of 32:

    Base Offense Level:    32      U.S.S.G. §§ 2D1.1(a)(5), (c)(4)
                                              [at least 1.2 kilograms but less
                                              4 kilograms of fentanyl]

    **Total Offense Level**:    **32**

(PSR ¶¶ 15-30.)

The government also agrees with the PSR's calculation of defendant's criminal history category of III, based on six criminal history points.[1] (PSR ¶¶ 34-41.) Accordingly, with a total offense level of 32 and criminal history category of III, the Guidelines range would be 151 to 188 months' imprisonment, with a statutorily mandated minimum sentence of at least ten years. (PSR ¶¶ 91-92.)

    **B.    Applicability of Safety Valve**

As noted by the PSR, the government does not recommend an additional two-level reduction in defendant's offense level under USSG § 2D1.1(b)(18) nor relief from the applicable ten-year mandatory minimum sentence because defendant has not complied with the fifth criterion of the safety valve provision set forth in 18 U.S.C. § 3553(f)(1)-(5). Defendant bears the burden of establishing by a preponderance of the evidence that he has met each of the five criteria set forth in 18 U.S.C. § 3553(f)(1)-(5). <u>United States v. Mejia-Pimental</u>, 477 F.3d 1100, 1104 (9th Cir. 2007); <u>United States v. Ajugwo</u>, 82 F.3d 925, 929 (9th Cir. 1996).

However, as detailed in the government's concurrent under seal filing, defendant has not met the fifth requirement of the safety valve of truthfully providing "all information and evidence the defendant has concerning the offense or offenses that were part of

---

[1] Paragraph 41 of the PSR incorrectly refers to defendant having a criminal history score of seven, but the correct score, as calculated in ¶¶ 40 and 41, is six.

3

the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5). This failure bars safety valve relief.

### C. USPO Recommendation

In its Recommendation Letter, the USPO recommended that the Court impose a sentence of: (1) a term of 151 months' imprisonment, at the low-end of the Guidelines range; (2) a five-year term of supervised release; and (3) a mandatory special assessment of $100.

## IV. GOVERNMENT'S SENTENCING RECOMMENDATION

The government concurs with the USPO's Guidelines calculations, including that defendant's Guidelines range is 151 to 188 months' imprisonment[2]; however, based on the factors set forth in 18 U.S.C. § 3553(a), the government believes that the appropriate sentence in this case is 163 months' imprisonment, followed by a five-year period of supervised release, and a $100 special assessment.

### A. Nature and Circumstances of the Offenses

First, the nature, circumstances, and seriousness of defendant's offense warrant a sentence within the Guidelines range. Defendant sought to check luggage containing nearly three kilograms of fentanyl powder onto a plane -- an act that, had defendant succeeded, would have risked the lives of not just the many eventual downstream users of the fentanyl, but also the passengers and crew of the plane. Fentanyl is one of the most common drugs in overdose deaths.[3] Nearly 150 people die from fentanyl overdoses every day. (Id.) Defendant's crime could have been devastating to communities and to individuals.

---

[2] The government objects to the PSR's reference to a plea agreement at ¶ 5, as there is no plea agreement in this case.

[3] Centers for Disease Control and Prevention, Fentanyl Facts, available at https://www.cdc.gov/stopoverdose/fentanyl/index.html (last accessed March 22, 2023.)

4

The Guidelines account for the seriousness of trafficking in such a large quantity of fentanyl. Accordingly, the government submits that this factor counsels in favor of a sentence within the Guidelines range.

### B.   History and Characteristics of Defendant

Defendant's history and characteristics are considerably aggravating. Defendant has a long history of entirely disregarding the criminal justice system. He has six prior convictions, including multiple convictions for controlled substances, and eleven more arrests as an adult. (PSR ¶¶ 34-39, 44-63.) Defendant also has an outstanding bench warrant for drug distribution in a Michigan 2013 case. (PSR ¶ 43; Recomm. Ltr. at 3.) Defendant's prior offenses show a pattern of dangerous/violent behavior and drug-related conduct. For example, as a passenger during a December 2011 traffic stop in Michigan, after law enforcement saw and recovered a large cellophane baggie containing cocaine from the floorboard, defendant grabbed the car's shifter, put the car in drive, and yelled "go" to the driver. (Id. ¶ 36.) Defendant and the driver then fled at a high speed until the car was forcibly stopped by stop sticks. (Id.) In 2012, defendant was convicted of domestic violence for assaulting his girlfriend, who told officers that defendant had choked her, grabbed her neck area and threw her to the ground, and pushed her against the wall when she tried to leave with her four-year-old child. (Id. ¶ 37.)

More recently, while on pretrial supervision in this case, defendant was arrested for illegally possessing a stolen firearm, an extended firearm magazine, and $40,000 in cash. (PSR ¶ 42.) Defendant's dangerous act on pretrial release showed a complete lack

5

of regard for the safety of his community and his pending criminal case.

Despite defendant's litany of convictions and encounters with the law, he has accrued only 6 criminal history points, and therefore falls only into Criminal History Category III.  While the government does not dispute the USPO's calculation, it appears that defendant's criminal history category may be somewhat understated, given the number and nature of defendant's prior convictions.  Moreover, defendant's criminal history category does not include defendant's unresolved 2013 warrant, nor his illegal possession of a firearm while on pretrial release in this case.  Accordingly, the government believes that this factor weighs in favor of a sentence above the low-end of the Guidelines range.

**C.   Need to Reflect Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Afford Deterrence, and Protect the Public**

The sentence must satisfy defendant's need for punishment or rehabilitation, as well as society's need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and protect the public. Defendant sought to bring three kilograms of fentanyl on a plane -- a decision that, had he succeeded, would have risked the lives of many, including the eventual users of the fentanyl and the passengers and crew on the plane.  Here, there is a particularly strong need for the sentence to deter defendant and others from committing future crimes with deadly consequences.  See 18 U.S.C. § 3553(a)(2)(B) (the sentence imposed must "afford adequate deterrence to criminal conduct," which encompasses both specific and general deterrence); United States v. Goff, 501 F.3d 250, 261 (3d Cir. 2007).  Further, a

6

significant sentence is necessary to promote respect for the law, especially given defendant's criminal history and noncompliance with the conditions of pretrial release, demonstrating a lack of respect for the law.

On the whole, a 163-month sentence is sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter defendant from committing further crimes, and protect the public from further crimes of the defendant.

## V.   CONCLUSION

For the foregoing reasons and the reasons detailed in the government's under seal filing, the government respectfully requests that the Court sentence defendant to a within-Guidelines term of imprisonment of 163 months, followed by a five-year term of supervised release, and a special assessment of $100.